Mary Anne Prescott POWELL, Plaintiff,

v.

SQUIRE, SANDERS & DEMPSEY, et al., Defendants.

No. C2–97–380.

United States District Court, S.D. Ohio, Eastern Division.

Jan. 14, 1998.

Bernard D. Mazer, Dublin, OH, for Plaintiff.

John W. Zeiger, Zeiger & Carpenter, Columbus, OH, for defendant David W. Alexander.

Scott E. North, Porter, Wright, Morris & Arthur, Columbus, OH, for Huntington Trust Company.

### ORDER

GRAHAM, District Judge.

This matter is before the Court on the motion of defendant David W. Alexander for an order imposing sanctions against plaintiff's counsel, Bernard Mazer, pursuant to Rule 11(c) of the Federal Rules of Civil Procedure. Plaintiff, Mary Anne Prescott Powell, is a beneficiary of two testamentary trusts administered by defendant Huntington Trust Company, N.A. ("Huntington"). Powell and Huntington have been involved in litigation in the courts of the state of Ohio arising out of Huntington's decision to invest trust assets in a commercial property in Columbus, Ohio. Mazer has been representing plaintiff in the state court litigation and Alexander has been representing Huntington.

One of the actions pending between the parties in state court is a defamation action filed by Huntington against Powell wherein Huntington alleges that Powell issued press releases to the media in several states accusing it of "self dealing, lying to the probate court, perpetuating a fraud on the probate court, and ripping off the dead." Alexander and his law firm filed the defamation action on behalf of Huntington and Mazer represents plaintiff Powell in that litigation.

After failing in his efforts to obtain a dismissal of Huntington's defamation action by way of motions for summary judgment, Mazer filed the instant case on behalf of Powell asserting claims of malicious prosecution and abuse of process against Huntington and Alexander. The complaint herein was filed on April 2, 1997. On May 1, 1997, counsel for Alexander advised Mazer that Powell did not have a cause of action against Alexander. Alexander's counsel reiterated his position in a letter to Mazer, dated May 9, 1997, and further stated:

> While I regret the necessity of raising the sanction issue, Ms. Powell's action against Mr. Alexander clearly is designed to improperly interfere with his representation of his client's interests. Even cursory legal research would have disclosed that Ms. Powell was barred from commencing her action against Mr. Alexander.

> Given your failure to review and comply with controlling authorities and your refusal to dismiss the action against Mr. Alexander, we have no choice but to seek to have Judge Graham terminate your suit. In doing so, we will prepare and serve the appropriate papers under Revised Rule 11 so that the court can determine whether Ms. Powell should bear the expense being incurred by Mr. Alexander.

Defendant Alexander's Motion for Sanctions, Ex. B.

On July 2, 1997, Alexander filed a motion for judgment on the pleadings. On that same date, Alexander's counsel sent Mazer a copy of Alexander's motion for judgment on the pleadings together with a letter which read in part as follows:

> Enclosed is a copy of David Alexander's motion for judgment on the pleadings, which we are filing today. As the memorandum in support of that motion demonstrates, and as we have brought to your attention before, this action is completely without merit.

> Also enclosed is a copy of a Rule 11 motion, served upon you pursuant to the 21 day safe harbor provision of Rule 11. We ask you to dismiss this action against David Alexander with prejudice. If you do not act to dismiss the action within the 21 days allowed by Rule 11(c), we will proceed with filing the Rule 11 motion as provided by the rule. In that regard, I invite your attention to those cases that have awarded full attorneys fees for both defending the action and presenting the Rule 11 motion where counsel did not take advantage of the opportunities presented to dismiss, in-

cluding the opportunity presented by the safe-harbor provision.

Upon hearing from you, we will agree to stipulate to the dismissal of the action with prejudice. . . .

Defendant Alexander's Motion for Sanctions, Ex. C.

Mazer and Powell did not accede to Alexander's request that he be dismissed from this litigation but instead continued to prosecute the action against him and opposed his motion for judgment on the pleadings. They also served him with various discovery requests, including a request for the taking of his deposition in which they proposed to interrogate him regarding his representation of the Huntington in the defamation action in which he continued to act as Huntington's counsel and in which Mazer continued to act as Powell's counsel. The court stayed discovery pending a decision on Alexander's motion for judgment on the pleadings.

On October 29, 1997, the Court granted Alexander's motion for judgment on the pleadings and on the same date, final judgment was entered in favor of Alexander dismissing plaintiff's complaint with prejudice. On November 12, 1997, Alexander filed the present motion for sanctions under Rule 11.

■ In this circuit, the test for the imposition of Rule 11 sanctions is whether the attorney's conduct was reasonable under the circumstances. *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir.1997). Sanctions are appropriate if the court finds that the attorney's conduct did not meet an objective standard of reasonableness under the circumstances. *See INVST Financial Group, Inc. v. Chem–Nuclear Systems, Inc.*, 815 F.2d 391, 401–02 (6th Cir.), *cert. denied*, 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987). The previous version of Rule 11 mandated sanctions when an attorney failed to satisfy this standard. However, under the 1993 amendments to Rule 11, the imposition of sanctions is discretionary rather than mandatory. *See* Fed.R.Civ.P. 11(c).

The 1993 amendments to Rule 11 added a so-called "safe harbor" provision, which requires a party seeking sanctions to first serve the Rule 11 motion on the opposing party at least twenty-one days before filing it with the court. Pursuant to Fed.R.Civ.P. 11(c)(1)(A), a motion for sanctions "shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Alexander complied with the "safe harbor" provision of new Rule 11 when his counsel served Mazer with a copy of the proposed motion for sanctions on July 2, 1997.

■ Citing *Ridder*, Mazer argues that Alexander's motion for sanctions must be denied because it was not filed before the Court entered final judgment on October 29, 1997 dismissing this action. There is language in *Ridder* which could be interpreted as supporting Mazer's position. In *Ridder*, 109 F.3d at 297, the court noted:

> [W]e hold that sanctions under Rule 11 are unavailable unless the motion for sanctions is served on the opposing party for the full twenty-one day "safe harbor" period before it is filed with or presented to the court; this service and filing must occur prior to final judgment or judicial rejection of the offending contention. Quite clearly then, a party cannot wait until after summary judgment to move for sanctions under Rule 11. (Footnote omitted).

The court in *Ridder*, 109 F.3d at 295, discussed the timing of a motion under Rule 11, and noted that, prior to 1993, under *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) and *Runfola & Assoc., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 372 (6th Cir. 1996), "a Rule 11 motion could be made after final judgment, subject to local rules establishing timeliness standards." *See also Val–Land Farms, Inc. v. Third National Bank in Knoxville*, 937 F.2d 1110, 1117 (6th Cir.1991) (district court retains jurisdiction to entertain motion for Rule 11 sanctions even after the filing of notice of appeal). The Supreme Court in *Cooter & Gell*, 496 U.S. at 396, held that a ruling on a motion for sanctions under Rule 11 required the determination of a collateral issue, and that the district court had jurisdiction to rule on such a motion after the

plaintiff voluntarily dismissed his complaint pursuant to Rule 41(a)(1).

The court in *Ridder*, 109 F.3d at 295, went on to quote from the Federal Rules of Civil Procedure Advisory Committee Notes on the 1993 Amendments, as follows:

> "The revision leaves for resolution on a case-by-case basis, considering the particular circumstances involved, the question as to when a motion for violation of Rule 11 should be served and when, if filed, it should be decided. Ordinarily the motion should be served *promptly after the inappropriate paper is filed,* and, if delayed too long, may be viewed as untimely. In other circumstances, it should not be served until the other party has had a reasonable opportunity for discovery. Given the 'safe harbor' provisions ... *a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)."*
>
> FED.R.CIV.P. 11 Advisory Committee Notes (1993 Amendments) (emphases added).

The Advisory Committee Notes quoted by the Sixth Circuit in *Ridder* indicate that, following the 1993 amendments to Rule 11, the timeliness of a Rule 11 motion must be decided in each case based upon the particular circumstances involved.

In *Ridder*, the defendant moved for sanctions under Rule 11 one month after the magistrate judge dismissed the plaintiff's claims. The defendant did not serve the plaintiff with a copy of the motion for sanctions prior to filing the motion with the court. The *Ridder* court noted that the defendant had not complied with the mandatory "safe harbor" service provisions, and that therefore, the motion should never have been presented to the court. *Ridder*, 109 F.3d at 296. The Court, *Id.* at 296–297, further noted that "the 'safe harbor' provision cannot have any effect if the court has already rendered its judgment in the case; it is too late for the offending party to withdraw the challenged claim." The court, *Id.* at 297, went on to state:

> As stated above, a motion for sanctions under Rule 11 must be served on the offending party for a period of "safe har-

bor" at least twenty-one days prior to the entry of final judgment or judicial rejection of the offending contention. A party seeking sanctions must leave sufficient opportunity for the opposing party to choose whether to withdraw or cure the offense voluntarily before the court disposes of the challenged contention.

> Pragmatic realities require such strict adherence to the rule's outlined procedure. By delaying the motion until after summary judgment was granted, Springfield deprived Ridder's counsel of the "safe harbor" to which the rule says he is entitled. Had Ridder's counsel been allotted his "safe harbor" service, he could have avoided sanction by withdrawing the claims against Springfield.

The Sixth Circuit had occasion to apply *Ridder* in the later unreported case of *Bernstein v. Remer*, 1997 WL 685369 (6th Cir. 1997). *Bernstein* also involved a situation in which the defendant filed a motion for sanctions after the case was dismissed and failed to serve a copy of the motion on the plaintiff prior to filing the motion. The Sixth Circuit concluded that Remer's motion was untimely. *See also Nagle Industries, Inc. v. Ford Motor Co.*, 173 F.R.D. 448, 458 (E.D.Mich.1997) (motion filed after grant of summary judgment untimely).

The case presently before the court is distinguishable from the circumstances found in the above cases. Here, Alexander did comply with the "safe harbor" provision by serving plaintiff, through her counsel Mazer, with a copy of his proposed motion for sanctions on July 2, 1997. He also gave Mazer advance notice of his intention to move for sanctions in the May 9, 1997 letter. Plaintiff had from July 2, 1997 to the dismissal of this action on October 29, 1997, a period of almost four months, to consider the motion for sanctions and the respective merits of plaintiff's claims and the motion for judgment on the pleadings. Thus, plaintiff and Mazer were "allotted [their] 'safe harbor' service" and had ample opportunity under the "safe harbor" provision to "choose whether to withdraw or cure the offense voluntarily before the court disposes of the challenged contention." *Ridder*, 109 F.3d at 297.

The prompt filing of Alexander's Rule 11 motion on November 12, 1997, fourteen days after the dismissal of plaintiff's complaint, did not operate to deprive plaintiff and Mazer of the benefits of the "safe harbor" provisions. In some situations, as in *Ridder*, the failure to file a Rule 11 motion prior to the entry of judgment may deprive a party of the "safe harbor" to which that party was entitled under Rule 11. However, there is no language in the new version of Rule 11 which requires that a Rule 11 motion be filed before the entry of judgment. All that rule requires is that the party be given the full and meaningful benefit of the twenty-one day period after service of the motion for sanctions and prior to the decision on the matter in contention in which to consider the motion and correct any problem. Prior case law, such as *Cooter & Gell, supra,* indicates that there is no jurisdictional problem with considering a Rule 11 motion after the entry of judgment.

In light of the Sixth Circuit's apparent approval of the Advisory Committee Notes establishing a case-by-case approach for the determination of the timeliness of Rule 11 motions, this court is disinclined to give an overly literal reading to the language in *Ridder,* 109 F.3d at 288 (stating that the "filing must occur prior to final judgment") or to apply this language to a situation where it is clearly inapplicable and unnecessary to further the purpose of Rule 11(c)(1)(A). Indeed, where, as here, the issue is whether the complaint states a claim upon which relief can be granted, it would seem unwise to require that the party seeking dismissal file its Rule 11 motion with the court before the court rules, thus initiating sanction proceedings which may turn out to be unfounded if the court denies the motion to dismiss. The Court concludes that Alexander's Rule 11 motion was timely filed. *See* Fed.R.Civ.P. 54(d)(2)(B).

■ Mazer's conduct in asserting claims of malicious prosecution and abuse of process against Alexander was not reasonable under the circumstances. The claims asserted against Alexander were not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law, or the establishment of new law. Furthermore, the Court believes that these claims were asserted for an improper purpose, including harassment and intimidation of Alexander in an attempt to interfere with his representation of his client, Huntington.

Alexander's motion for sanctions against Mazer is well taken. The Court will conduct a hearing to consider the nature and extent of the sanctions which should be imposed on Mazer. The hearing will be held on February 2, 1998 at 1:30 p.m.

It is so ORDERED.