Filed 3/5/14  Internat. Marketing Enterprises v. Biofilm CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| INTERNATIONAL MARKETING ENTERPRISES, LLC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> BIOFILM, INC., <br><br> Defendant and Respondent, <br><br> LEON E. CAMPBELL, <br><br> Objector and Appellant. | D064139 <br><br><br> (Super. Ct. No. 37-2012-00100243-CU-MC-CTL) |


APPEAL from an order of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Reversed.

Leon E. Campbell for Plaintiff and Appellant and Objector and Appellant.

Solomon Ward Seidenwurm & Smith and Edward J. McIntyre for Defendant and Respondent.

This case underscores the requirement that a party seeking sanctions under Code of Civil Procedure[1] section 128.7 strictly comply with that statute. International Marketing Enterprises, LLC (IME) and especially its attorney Leon E. Campbell (Campbell and IME together Appellants) engaged in repeated untoward conduct. Campbell in particular ignored court orders and filed multiple meritless suits on behalf of a variety of entities related to IME. It appears that none of these suits has been pursued for a valid purpose, but instead, Campbell's litigation strategy appears to be little more than a harassment campaign aimed at Biofilm, Inc.

Based on Appellants' actions, it is no surprise that Biofilm brought a motion for sanctions under section 128.7, and the superior court entered an order directing payment of monetary sanctions to Biofilm. Appellants appeal that order, contending, among other arguments, that Biofilm failed to provide the required "safe harbor" period under section 128.7, subdivision (c)(1) before filing its motion. We agree. Biofilm's original notice of motion failed to include a hearing date and the amended notice of motion was served and filed on the same day; thus, the "safe harbor" requirement was not satisfied. Accordingly, we reverse.

FACTUAL AND PROCEDURAL BACKGROUND

The genesis of the dispute between IME and Biofilm is a $360,000 loan Biofilm made to Fay Avenue Properties, LLC (Fay Avenue), IME's sister company. The loan was secured by a deed of trust recorded against certain commercial real property located

---

[1]     Statutory references are to the Code of Civil Procedure unless otherwise specified.

at 7630 Fay Avenue, La Jolla, California 92037 (the Property). Fay Avenue defaulted on the loan, and Biofilm began foreclosure proceedings.

Prior to the trustee's foreclosure sale, Fay Avenue filed for bankruptcy protection, delaying the sale. After resolving the issues with the bankruptcy court, Biofilm proceeded with the foreclosure with a new trustee's sale date. On the eve of the new sale date, Fay Avenue deeded the Property to Diane York, Fay Avenue's owner. York then filed for personal bankruptcy protection. Biofilm eventually was able to sort out the procedural morass and conducted the trustee's sale and was the successful bidder at the sale.

York would not vacate the Property; therefore, Biofilm filed an unlawful detainer action against several of York's companies, which allegedly operated at the Property.[2] The unlawful detainer proceeded to trial, and the court awarded Biofilm possession of the Property. In the course of the unlawful detainer action, York apparently produced a lease for the Property in favor of IME. The court found that the lease was a "sham" and was "created to try and subvert the foreclosure sale, the unlawful detainer action, or both."

Prior to Biofilm's filing of the unlawful detainer action, two of York's companies filed complaints against Biofilm. On February 7, 2012, York filed *La Jolla Spa MD, Inc. v. Biofilm, Inc.* (Super. Ct. San Diego County, No. 37-2012-00091882-CU-OR-CTL) (the La Jolla Spa Action). On July 9, 2012, York filed the instant matter. Although neither of these complaints is in the record, it appears, based on court orders and related pleadings,

_____

[2]     York owns and controls Fay Avenue, La Jolla Spa MD, Inc., DYG Spa, Inc., and IME.

3

that the respective complaints challenged Biofilm's loan to Fay Avenue and the foreclosure.

While the unlawful detainer action was pending, on July 25, 2012, York filed a third complaint against Biofilm entitled *Fay Avenue Properties, LLC v. Biofilm, LLC* (Super Ct. San Diego County, No. 37-2012-00101256-CU-MC-CTL) (Fay Avenue I Action). On August 8, Campbell made his first ex parte application in that action to prevent the unlawful detainer action from proceeding to trial. The court denied the application, finding that no ex parte notice was given. In addition, the court noted that Fay Avenue was in bankruptcy so it lacked standing to serve as plaintiff in the Fay Avenue Action I. Campbell renewed his ex parte application two days later, but the court again denied the application for the same reasons it denied the first ex parte application.

Despite two orders denying the requested relief, Campbell filed a "virtually identical complaint" on August 13, 2012, entitled *Fay Avenue Properties, LLC v. Biofilm, LLC* (Super Ct. San Diego County, No. 37-2012-00102277-CU-MC-CTL) (Fay Avenue II Action). The Fay Avenue II Action was assigned to a different judge than the Fay Avenue I Action. Campbell then dismissed the Fay Avenue I Action.

The day after the trial of the unlawful detainer action, Campbell appeared ex parte in the Fay Avenue II Action, requesting the same relief the court denied in the Fay Avenue I Action. Campbell, however, did not inform the court about the orders denying his requested relief in the Fay Avenue I Action. Nevertheless, like the court in the previous action, the court denied the requested relief.

4

Biofilm filed motions for judgment on the pleadings in the La Jolla Spa Action, the Fay Avenue II Action, and the instant action. Ultimately, the courts granted all the motions based on the same fatal defect in the respective complaints: the plaintiff lacked standing.

While the motion for judgment on the pleadings was pending in the instant matter, Biofilm's counsel sent Campbell a letter dated October 15, 2012 requesting that IME withdraw its opposition to the motion, dismiss the instant matter, and expunge the related lis pendens. The letter warned Campbell that if IME did not take corrective action "within the time that . . . section 128.7 prescribes," a motion for sanctions would be filed. The letter enclosed a copy of the notice of motion, motion, and a memorandum in support of the motion for sanctions. The notice accompanying the letter (Oct. 2012 notice), however, did not indicate the date or time of the hearing on the motion for sanctions.

Campbell did not take any corrective action, and Biofilm served and filed an amended notice of motion and motion for sanctions under section 128.7 on April 4, 2013. This amended notice included a hearing date of April 26, 2013 at 10:30 a.m. The motion and supporting memorandum clearly set forth the sanctionable conduct, the legal authority permitting the requested sanctions, and evidence supporting the request for sanctions.[3]

IME filed a two-page opposition to the motion for sanctions in which IME argued that it had not received the 21-day "safe harbor" required under section 128.7,

---

[3] Except for the missing date and time of the hearing on the motion, the pleadings served on October 15, 2012 appear to be the same as those served on April 4, 2013.

subdivision (c)(1). Except for the reference to section 128.7, the opposition did not include any citation to relevant case law. Also, IME did not include any evidence in support of its opposition. Further the opposition did not challenge the merits of the motion for sanctions.

At the hearing on the motion for sanctions, the court issued a tentative ruling awarding sanctions to Biofilm against IME, Fay Avenue, La Jolla Spa, and Campbell (jointly and severally) in the amount of $143,435.13. During oral argument, Campbell admitted that IME had only opposed the motion on procedural grounds. To this end, Campbell handed the court what he referred to as a supplemental memorandum and a copy of the opinion in *Galleria Plus, Inc. v. Hanmi Bank* (2009) 179 Cal.App.4th 535 (*Galleria*). The court noted that the supplemental memorandum merely cited two cases without "argument," "comment," or "research."

Noting that the court did not appear inclined to deny the motion because IME had not received the required 21-day safe harbor, Campbell asked the court for a six-week continuance to "respond adequately to the merits." The court denied the request for a continuance and the tentative ruling became the court's order.

Appellants timely appealed.

DISCUSSION

Section 128.7 requires attorneys (or parties if they are unrepresented) to certify, through their signature on documents filed with the court, that every pleading, motion or other similar paper presented to the court has merit and is not being presented for an improper purpose. (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 516; see § 128.7, subd.

6

(b)(1)-(4).)  If, after notice and a reasonable opportunity to respond, the court determines the certification was improper under the circumstances, it may impose an appropriate sanction.  (§ 128.7, subd. (c).)

Before a party may file a motion seeking sanctions under section 128.7, that party must first serve a copy of the motion on the offending party and allow 21 days to withdraw the offending pleading.  This 21-day "safe-harbor" period " ' "permits a party to withdraw a questionable pleading without penalty, thus saving the court and the parties time and money litigating the pleading as well as the sanctions request."  [Citations.]' " (*Day v. Collingwood* (2006) 144 Cal.App.4th 1116, 1127.)  "If the pleading is withdrawn, the motion for sanctions may not be filed with the court"; but if "the pleading is not withdrawn, the motion for sanctions may then be filed."  (*Levy v. Blum* (2001) 92 Cal.App.4th 625, 637; see also § 128.7, subd. (c)(1).)[4]

At issue here is whether Appellants received the required 21-day "safe harbor" to take corrective action.  (See § 128.7, subd. (c)(1).)  Appellants contend they did not because the October 2012 notice did not include the date and time of the hearing.  Thus, they argue that notice was defective.  (See *Galleria*, *supra*, 179 Cal.App.4th at p. 538.)

---

4    Section 128.7, subdivision (c)(1) provides:  "A motion for sanctions under this section shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b).  Notice of motion shall be served as provided in Section 1010, but shall not be filed with or presented to the court unless, within 21 days after service of the motion, or any other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.  If warranted the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. . . ."

Biofilm asserts Appellants forfeited this argument by failing to raise it in opposition to Biofilm's motion for sanctions. We disagree.

As a general rule, an appellate court will not review an issue a party did not raise by some proper method in the trial court. (See *City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 685 [contentions or theories raised for the first time on appeal are not entitled to consideration]; *Amato v. Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1794 ["It must appear from the record that the issue argued on appeal was raised in the trial court. If not, the issue is waived."].) Here, Appellants opposed the motion for sanctions on the sole ground that they did not receive the required 21-day safe harbor. Indeed, the opposition stated: "In this case no safe harbor was included in the Notice of Motion."

Although Appellants did not cite *Galleria*, *supra*, 179 Cal.App.4th 535 in their opposition, they clearly argue they did not receive the required safe harbor based on the notice of motion. Only three reasonable inferences could be drawn from this argument. One, the October 2012 notice was defective. Two, the amended notice of motion served on April 4, 2013 was flawed. Three, both failed to comply with section 128.7, subdivision (c)(1).

Biofilm replied to Appellants' contention by arguing it provided sufficient notice with multiple letters and the October 2012 notice. Therefore, it is apparent that Biofilm understood that Appellants were challenging the October 2012 notice. We agree with Biofilm that Appellants could have been more explicit in their opposition by specifically arguing that the October 2012 notice of motion was defective because it lacked a date,

8

but do not believe this omission was sufficient to cause Appellants to forfeit this issue on appeal. Biofilm was aware that Appellants were challenging the sufficiency of the October 2012 notice. In addition, Biofilm knew or should have known that if Appellants were challenging the October 2012 notice then the amended notice could also prove to be defective because it was filed the same day it was served in violation of section 128.7, subdivision (c)(1).

In any event, even if we were to determine that Appellants forfeited their challenge by failing to raise it below, we would still address Appellants' argument because it a pure question of law with no factual disputes. (*Menefee v. County of Fresno* (1985) 163 Cal.App.3d 1175, 1182.)

Having resolved to reach the merits of the instant matter, we next turn to whether Appellants received the required safe harbor. To address this question, we must determine whether the October 2012 notice satisfies the requirements of section 128.7. Under *Galleria*, *supra*, 179 Cal.App.4th 535, the answer is a clear no.

In *Galleria*, the respondent served the appellant with a purported notice of motion for sanctions on April 25, 2008. "The face page and body of the document stated that the motion would come on for hearing 'on AAA at BBB.' " (*Galleria*, *supra*, 179 Cal.App.4th at p. 537.) The document also noted that the motion for sanctions could not be filed until 21 days after it was served, which would be "on or after May 23, 2008." (*Ibid.*) On June 13, 2008, the respondent served the appellant with a motion for sanctions and filed it with the court the same day. The notice for that motion provided a hearing date of August 6, 2008. (*Ibid.*)

9

The Court of Appeal reversed the superior court's order granting the motion and awarding sanctions. The court interpreted section 128.7 as requiring the notice of motion to be served in compliance with section 1010, but not to be " 'filed with . . . the court, unless, within 21 days after service of the motion, or any other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. . . .' " (*Galleria*, *supra*, 179 Cal.App.4th at p. 537, quoting § 128.7, subd. (c)(1).) The court also noted that section 1010 provides that a notice must " 'state when . . . it will be made.' "[5] (*Galleria*, *supra*, at p. 538, quoting § 1010.) The court stated that "[s]trict compliance with the statute's notice provisions serves its remedial purpose and underscores the seriousness of a motion for sanctions." (*Galleria*, *supra*, at p. 538.) Based on its interpretation of sections 128.7 and 1010, the court determined that the respondent's original notice failed to specify when the motion would be made, and therefore, that document did not provide notice of the 21-day period or serve the remedial purpose of section 128.7's notice provisions. (*Galleria, supra,* at p. 538.)

---

[5] Section 1010 provides: "Notices must be in writing, and the notice of a motion, other than for a new trial, must state when, and the grounds upon which it will be made, and the papers, if any, upon which it is to be based. If any such paper has not previously been served upon the party to be notified and was not filed by him, a copy of such paper must accompany the notice. Notices and other papers may be served upon the party or attorney in the manner prescribed in this chapter, when not otherwise provided by this code. No bill of exceptions, notice of appeal, or other notice or paper, other than amendments to the pleadings, or an amended pleading, need be served upon any party whose default has been duly entered or who has not appeared in the action or proceeding."

*Galleria*, *supra*, 179 Cal.App.4th 535 is directly on point here. The exact issue pending before that court is the primary issue before us: does a notice of motion that does not include a date or time for the hearing on the motion satisfy the requirements of section 128.7 and begin the 21-day safe harbor period. Biofilm does not attempt to distinguish *Galleria*, *supra*, 179 Cal.App.4th 535, but instead, argues it was wrongly decided. Specifically, Biofilm maintains the court incorrectly incorporated section 1010 into section 128.7. Biofilm insists section 128.7 only requires a party to *serve* the opposing party "as provided in section 1010" and nothing else. Section 1010 contains an express service provision: "Notices and other papers may be served upon the party or attorney in the manner described in this chapter, when not otherwise provided by this code." Biofilm argues section 128.7's reference to section 1010 merely compels a party to serve a motion for sanctions on another party or its attorney by any method provided by chapter 5 of the Code of Civil Procedure. Because Biofilm personally served Appellants with the October 2012 notice, it argues that it complied with the notice requirements of section 128.7 and the safe harbor time period was triggered. (See §§ 128.7, subd. (c)(1), 1010, 1011.) Biofilm's argument, however, neglects to consider the basis of section 128.7 and how various courts have interpreted the need for a formal noticed motion to satisfy the statute's safe harbor requirement.

Section 128.7 was modeled on the 1993 revision of Rule 11 of the Federal Rules of Civil Procedure. (See *Cromwell v. Cummings* (1998) 65 Cal.App.4th Supp. 10, 14 (*Cromwell*).) "To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the 'safe harbor' period

11

begins to run only upon service of the motion." (Fed. Rules Civ.Proc., rule 11, 28 U.S.C.A. (2008) Advisory Com. Notes, 1993 amendments, p. 14.) As the court in *Cromwell* noted, "[b]y specifically requiring service of the 'motion' and 'notice of motion,' the Legislature made clear that the papers to be served on the opposing party are the same papers which are to be filed with the court no less than [21] days later."[6] (*Cromwell*, *supra*, 65 Cal.App.4th Supp. at p. 15.) That court determined that letters threatening sanctions did not trigger the safe harbor provision of section 128.7. In doing so, the court noted that one of the problems with the letter was that it did not specify when the motion for sanctions would be made: "Correspondence to opposing counsel which threatens sanctions of an unknown nature at an unspecified time against unidentified persons, and which lacks citation to controlling authority, does not fulfill these statutory purposes." (*Cromwell*, *supra*, at p. 15.)

In *Barnes v. Department of Corrections* (1999) 74 Cal.App.4th 126 (*Barnes*), the respondent served and filed a motion for sanctions after the conclusion of the case. In response to the argument that the defendant failed to comply with the safe harbor provision of section 128.7, subdivision (c)(1), the defendant argued that it earlier gave the plaintiff "informal notice" that it would seek sanctions if the plaintiff did not dismiss the

---

6    The motion must include at least the notice of hearing of the motion, the motion itself, and a memorandum of points and authorities in support. (Cal. Rules of Court, rule 3.1112(a).) The first page of each paper filed must reflect the date, time, and location of the hearing, and the nature or title of any attached documents. (Cal. Rules of Court, rule 3.1110(b)(1), (2).) Thus, if the same papers are to be filed with the court that are served on the opposing party (see *Cromwell*, *supra*, 65 Cal.App.4th Supp. at p. 15) then it logically follows that the notice of the motion served on the opposing counsel or party would include the date and time of the hearing on the motion.

complaint. (*Barnes*, *supra*, at p. 135.)  In determining that the defendant's informal notice did not satisfy the requirements of section 128.7, the court noted, "it is apparent that section 128.7 requires a formal noticed motion in order to comply with the statute." (*Barnes*, *supra*, at p. 135.)  "Therefore, informal notice of an intent to seek sanctions in the future cannot serve as substitute to the requirements set forth in section 128.7 for a formal noticed motion." (*Barnes, supra,* at p. 136.)

Although the court in *Barnes*, *supra*, 74 Cal.App.4th 126 was not focused on the defendant's failure to provide the time and date of the hearing, it is telling that the court repeatedly stated the need for a "formal noticed motion." (*Id*. at pp. 134-136.)  A formal noticed motion requires the date and time of the hearing.  (See Cal. Rules of Court, rule 3.1110(b)(1), (2); § 1010; *Bohn v. Bohn* (1913) 164 Cal. 532, 536-537.)  In *Bohn*, the defendant filed a motion for change of venue, without specifying a time for the hearing of the motion.  The court concluded a change of venue must be sought by noticed motion, and such notice was required by section 1010 to state when the motion would be heard. The court stated:  " 'In the present matter, if the formal motion which appellant served on the attorneys for plaintiff be treated as a notice of motion, it was radically defective as such in the very essential particular that it did not state any time when the motion would be made or brought on for hearing, and for that reason the motion for a change of the place of trial was properly denied.' " (*Bohn*, *supra*, at pp. 536-537.)  Thus, it has been long established that a formal noticed motion requires the date and time of the hearing on the motion to be included in the notice.  It is undisputed that Biofilm's October 2012 notice did not contain the date and time for the hearing on the motion for sanctions.  As

such, it was fatally defective and could not have been a formal noticed motion. (*Ibid.*) It thus did not satisfy the safe harbor requirements of section 128.7, subdivision (c)(1). (See *Galleria*, *supra*, 179 Cal.App.4th at p. 538; *Cromwell*, *supra*, 65 Cal.App.4th Supp. at p. 15; *Barnes*, *supra*, 74 Cal.App.4th at p. 135.)

*Galleria, supra,* 179 Cal.App.4th 535, *Cromwell, supra,* 65 Cal.App.4th Supp. 10, and *Barnes, supra*, 74 Cal.App.4th 126 make clear that a formal noticed motion is required to comply with section 128.7, subdivision (c)(1). Biofilm does not provide us with any authority supporting its position that something less than a formal noticed motion triggers the 21-day safe harbor. Instead, Biofilm contends requiring a formal noticed motion is "inapposite to requirements of the San Diego [S]uperior [C]ourt." Biofilm represents that San Diego Superior Court uses an independent calendaring system, where calendar clerks in each department provide a lawyer with a hearing date for a motion and require the lawyer reserving the hearing date to file the motion at least within a day of reserving the date. To support its position, Biofilm asks this court to take judicial notice of a document entitled "Department 68 Policies and Procedures." This document indicates that Department 68 of San Diego Superior Court requires motion papers to be filed the same day a hearing date is obtained from the calendar clerk. However, neither this case nor any of the cases involving Biofilm are or were pending in Department 68. Accordingly, the document "Department 68 Policies and Procedures" is irrelevant here, and for this reason, we decline to take judicial notice of it. (See *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4.)

14

Instead, we are more concerned about the practices and procedures in Department 66, where the instant matter was assigned. The record is devoid of any indication regarding Department 66's procedures for a lawyer obtaining a hearing date. Moreover, the record is silent regarding Biofilm's efforts to obtain a hearing date for its sanctions motion when it provided the October 2012 notice to IME. Did Biofilm attempt to obtain a hearing date at that time, but the calendar clerk would not provide one unless Biofilm filed its motion? Did Biofilm explain the requirements of section 128.7 to the calendar clerk that Biofilm was required to provide a formal noticed motion to IME to satisfy the safe harbor provision, but could not file the motion for at least 21 days? If the calendar clerk was still unwilling to provide a hearing date, did Biofilm apply ex parte to the court for relief? None of these questions are answered in the record. Thus, we cannot determine if the superior court somehow prevented Biofilm from complying with section 128.7, subdivision (c)(1).

Further, even if we were to assume that Department 66 used the same procedures for calendaring a motion as Department 68, we would not determine that the October 2012 notice satisfied the requirements of section 128.7, subdivision (c)(1). We are mindful of a superior court's need to control its calendar. We understand that a superior court does not want to burden its calendar with numerous hearing dates on motions that will never be filed. To prevent this occurrence, it makes sense that a superior court would require a litigant to file a motion the same day it receives a hearing date. However, a motion for sanctions under section 128.7 is different. It involves a two-step process. The moving party first serves the sanction motion on the offending party

15

without filing it. The opposing party then has 21 days to withdraw the improper pleading and avoid sanctions (during the safe harbor). At the end of the safe harbor, if the pleading is not withdrawn, the moving party may file the motion. (§ 128.7, subd. (c)(1); *Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 698-699.) A San Diego Superior Court local rule or a courtroom policy or practice is invalid if it is inconsistent with the Code of Civil Procedure. (*Kalivas v. Barry Controls Corp.* (1996) 49 Cal.App.4th 1152, 1158; *Mentzer v. Hardoin* (1994) 28 Cal.App.4th 1365, 1372.) As such, every San Diego Superior Court must allow litigants to comply with section 128.7. This will require providing a hearing date for a motion for sanctions, but not mandating that the moving party file the motion with the court until the expiration of the safe harbor provision.

Prior to Biofilm providing IME with the October 2012 notice, Biofilm had notice that there was a strong possibility that a formal noticed motion was required to satisfy the requirements of section 128.7, subdivision (c)(1). *Cromwell* mentions the need to provide the opposing party with the time and place of a future sanctions motion. (*Cromwell*, *supra*, 65 Cal.App.4th Supp. at p. 15.) *Barnes* reinforces the need for a formal noticed motion to satisfy section 128.7's safe harbor requirements. (*Barnes*, *supra*, 74 Cal.App.4th at p. 135.) *Galleria* specifically states section 128.7, subdivision (a)(1) requires notice of the date and time of the sanctions motion to begin the safe harbor period. (*Galleria*, *supra*, 179 Cal.App.4th at p. 538.) All three of these cases were in existence well before Biofilm served IME with the October 2012 notice. In fact, the Rutter Group's Civil Procedure Before Trial advises practitioners that the notice of the

16

motion for sanctions must include a time and place to satisfy the safe harbor requirement. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2013) ¶ 9:1201, p. 9(III)-28.) Although Biofilm has a colorable argument that the Fourth District does not have to follow *Galleria*, the more prudent approach would have been to comply with that case and provide a formal noticed motion to begin the safe harbor period. This is especially true when there is no authority supporting Biofilm's less formal approach to notice and courts have consistently held that strict compliance with section 128.7's notice provisions serves its remedial purpose and underscores the seriousness of a motion for sanctions. (*Galleria*, *supra*, 179 Cal.App.4th at p. 538; *Li v. Majestic Industry Hills* (2009) 177 Cal.App.4th 585, 595; *Barnes*, *supra*, 74 Cal.App.4th at p. 136; *Cromwell*, *supra*, 65 Cal.App.4th Supp. at p. 15.)

We follow the holding of *Galleria*, *supra*, 179 Cal.App.4th 535. The October 2012 notice was defective as it did not include the date and time of the hearing on the motion for sanctions. Because Biofilm filed its April 26, 2013 motion for sanctions the same day it was served, it did not comply with section 128.7, subdivision (c)(1) and the order must be reversed.[7]

---

[7] Because we resolve this matter on Biofilm's failure to provide a safe harbor, we do not reach the other issues Appellants raised in this appeal.

DISPOSITION

The order awarding sanctions is reversed.  IME is awarded its costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

O'ROURKE, J.

AARON, J.